No. 2208

Second Circuit Appeal.

HENRY PIPER, ET AL. v. MRS. ELIZA GRAY.

(June 6, 1925, Opinion and Decree.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Sales—Par. 270, 277, 284.**

The obligation of the vendor is to place the vendee in possession of the property sold and defend the vendee's possession in case any adverse claimant sought to dispossess them by a superior title. The vendor is not obliged to defend the vendee against a mere eviction by force not alleged to be based on any claim of right.

(Civil Code, Art. 2500. Editor's note.)

2. **Louisiana Digest—Evidence—Par. 222.**

Parol testimony to prove a rescission of a sale of real estate is inadmissible.

(Civil Code, Articles 2275 and 2276. Editor's note.)

Appeal from Thirteenth Judicial District Court of Louisiana, Parish of Rapides, Hon. John A. Williams, Judge.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed with reservations.

T. F. Hunter, of Alexandria, attorney for plaintiffs, appellants.

Overton & Hunter, of Alexandria, attorneys for defendant, appellee.

CARVER, J. Mrs. Eliza Gray, as the representative of Philip F. Gray, deceased, having sued out executory process for the enforcement of a mortgage and vendor's lien on certain land sold with warranty on September 11, 1918, by said Philip F. Gray to Henry Piper and Frank Piper, this suit was brought by Henry Piper and the legal representatives of Frank Piper, then deceased, to retain further proceedings under said process.

The grounds alleged in the petition are:

1. That one John Forrest, in the latter part of 1919, took posession of part of the land included in the sale, built a fence around same, notified plaintiffs that he was the owner thereof, ran them off and told them never to enter same again.

2. That on the occurrence of said interruption of their possession, they demanded of Gray that their title to all of the land be perfected by him before they completed payment; that Gray immediately took steps to have them quieted and clear up the title "agreeing either to perfect their title or to refund the amount of money which they had paid, or, if they so desired, to permit them to retain a portion of the land of which they still had possession and give them back the three outstanding notes on which executory process has now been issued."

3. That the consideration for which the notes were given has failed by reason of their eviction from part of the property and the notes are therefore extinguished.

4. That Gray consented to an extension of the time for the payment of the notes until he could perfect the title to the land sold by him with warranty.

They also allege that Gray died in July, 1921, before he had time to join them in a suit for the recovery of the land from which they had been evicted.

They further allege that they had offered to pay Mrs. Gray the amount of the three notes, provided she would clear up the title to the land and that she refused to do so.

The prayer of the petition is that an injunction issue that on trial same be perpetuated; and for judgment annulling and cancelling the notes foreclosed on.

There is no alternative prayer for the rescission of the entire sale either because of the eviction or because of Gray's alleged agreement to refund the price and take back the land.

Neither is there any prayer for the enforcement of Gray's alleged consent to extend the notes until perfection of the title.

There is, however, a prayer for general relief.

The District Judge rejected the demands of plaintiff who thereupon took an appeal.

The proof, while showing that Forrest took possession of some land of which plaintiffs were in possession, yet it falls far short of showing that the land Forrest took was included in Gray's sale, to the Pipers. The proof rather shows it was not so included, although it is not conclusive one way or the other.

It that land were part or the land sold by Gray, though the eviction against which a vendor warrants is not one based merely on force or intimidation, such as is here alleged, but one based on right.

Civil Code, 2500, says:

"Eviction is the loss suffered by the buyer of the totality of the thing sold, or of a part thereof occasioned by the right or claims of a third person."

Generally this eviction must be shown by legal process.

In Morris vs. Kenton, 2 La. Ann. 722, a buyer sued in warranty to recover the price paid and showed a judgment of eviction to the suit in which it was rendered, though, neither he nor his vendor has been made a party. The court rejected his demand, stating that the judgment was not binding on him or his vendor. The Syllabus reads, "To make a vendor liable under his warranty the purchaser must be evicted by some lawful authority. Per curiam. The letter must maintain and vindicate his possession against intrusion, or any force but that of the law itself."

In Minor vs. Robinson, 6 Rob. 166 being a suit for the balance due on property sold, defendant's demand for diminution

of the price on account of partial eviction, was rejected because the proof showed that though placed in possession by his vendor he had voluntarily yielded this posession to an adverse claimant. The Syllabus reads thus:

"A vendor will not be responsible, where the purchaser has voluntarily surrendered the possession of the thing sold, without any action having been brought against him."

There are cases holding that where the sale is an absolute nullity because the property belongs to some one else than the vendor, actual eviction need not be shown; but the doctrine of these cases applies only where the proof is clear that there is an outstanding title to which that given by the vendor must yield. Here no such title is even alleged.

The case of Bonvillain vs. Bodenheimer, 117 La. 794, 42 South. 273, exhaustively considers the law on this question.

Plaintiff did not offer to prove any title in Forrest and such title if it had been offered would have been inadmissible because not alleged.

This consideration disposes of plaintiffs' complaint that their possession was disturbed and also their complaint that the consideration of the notes had failed by reason of the alleged eviction.

Plaintiffs offered parol evidence to show that Gray had agreed or at least expressed willingness either to take back all the land and refund the price or to let them keep what they still had and surrender the notes remaining unpaid or to extend payment of these notes until he could clear up the title.

The District Judge excluded this testimony so far as concerned any agreement to give back the price and take back all the land or surrender the notes and let plaintiffs keep the land they still had in possession.

We think this ruling correct.

It was virtually an attempt to prove the rescission either in whole or in part of a sale of real estate, which, under Civil Code 2275 could not be done.

In Emmerling vs. Beebe, 15 La. 251, it was held that an offer of parol testimony, made in that case, was, in substance, an effort to prove that a sale of a slave had been rescinded and that parol testimony was not admissible for that purpose.

This consideration disposes of two of the alleged agreements of Gray, namely: That he was willing to undo the sale entirely or undo it partially by giving the unpaid notes back and letting plaintiff keep the land of which they still retained possession.

There being no prayer for the enforcement of the alleged agreement to extend the notes, we might terminate the case here. If, however, the prayer for general relief can warrant the court in considering this question, we think plaintiffs' contention on this score without merit.

The only evidence actually found in the record on this question is the testimony of Henry Piper, page 12, as follows:

"Is it not a fact that Gray told you that he did not want you to finish paying for that land until he could quiet your title to it?"

Objection was made but overruled, and the witness answered:

"Yes, sir."

Alice Taylor, the widow of Frank Piper, was asked, page 17.

"Did Gray promise at that time (meaning on an occasion when he came to her house) to give you back those notes?"

Defendant's counsel objected, but the court overruled the objection, and the witness answered:

"Yes, sir."

We think this objection should have been sustained for the reasons given above.

This witness was not asked whether Gray ever agreed to extend the time or not.

C. F. Wilkerson, though, was asked, page 23:

"Did Mr. Gray during the course of a conversation that he had with you about this property, tell you that he had agreed to extend the time for the payment of these notes until ·he could quiet these negroes in their possession or refund the said notes?"

Counsel for defendant objected and the court sustained the objection.

As asked, the question was objectionable, although if the matter of extension and the matter of refundment had been separated, the question as it related to the extension would in our opinion, have been permissible, although that relating to refundment would not.

Taking it as proven in the case, though, that Gray did agree to an extension, it is not pretended that there was any consideration ·for this agreement other than the obligation which plaintiffs claim he was under to restore them possession of the land from which Forrest had run them off.

The record, though, does not show that he was under such obligation, nor, as held above, were the allegations of the petition such as to permit proof of any such obligation.

Gray's obligation as vendor was to place them in possession of the property sold, which he seems to have done. His further obligation was to defend their posession in case any adverse claimant sought to dispossess them by a superior title. He was not obliged to defend them against a mere eviction by force not alleged to be based on any claim of right.

Plaintiffs' duty was to maintain by legal process the possession which Gray had given them.

Even if Gray before the sale had not had any possession of the property, plaintiffs themselves seem to have had possession long enough to entitle them to the possessory action.

If Forrest's method was much as they could not or did not care to resist by methods in kind, they could and should have vindicated their own right and performed their duty to Gray by bringing a possessory action, in which, under the facts as stated in their petition, they would have succeeded. Then, if Forrest had brought a petitory action alleging a superior title, they could have called Gray in warranty. Even such an attack by Forrest would not have entitled them to suspend payment of the price. Under articles 2557 and 2558 of the Civil Code the vendor can either give security in such case and demand payment to himself, or if he choose not to give security may compel the buyer to deposit the price subject to the decision in the suit.

We have examined the two decisions cited by counsel for plaintiff, namely:

Barrow vs. Caseaux, 5 La. 72; Greenwell vs. Roberts, 7 La. 63, but do not think they entitle plaintiffs, under the circumstances of this case, to withhold payment.

In the Greenwell case, it appears that one Harrelson, an attorney, had obtained a judgment against the plaintiff for Rutherford Fisk and McNeilly; that plaintiff had given Harrelson a mortgage upon consideration of his cancelling this judgment; that he had not cancelled same and had no right or authority to do so; but that he was proceeding to execute the mortgage.

The court properly held that the consideration of the mortgage had failed.

In the Barrow case, defendant had sold plaintiff a tract of land shown on a plat

exhibited before the sale as high land Thereafter the location of the land, which had not been approved by the Government, was changed, the result of the change being to substitute 150 acres of low, swamp land in place of the high land for which plaintiff had contracted. Defendant, in recognition of the clear obligation that rested on him under these circumstances, had agreed to a reduction in the price agreed on. Subsequently in violation of this agreement he undertook to foreclose for the balance due on the entire agreed price. The court held that his promise to grant a reduction was binding, being based upon a just consideration. The eviction in that case being, by legal authority and not "frontier process", the court held that the responsibility of the defendant to meet the contingency was a good consideration.

In this case, though, the record does not show nor does the petition even allege any superior right in Forrest which suprior right would be necessary to place any responsibility on defendant to meet the contingency which would have been presented if Forrest had brought suit; much less does it show any responsibility on defendant to restore plaintiffs to a possession from which they have been evicted without any legal process, and so far as the record shows, without any legal right.

Perhaps it is not necessary to make any such express reservation, but it will do no harm to reserve plaintiffs' right, in case they pay the balance due on the purchase price, to sue to recover same, in case they can show that the title they obtained from Gray was not such a title as successfully could · have been opposed to Forrest's if Forrest had brought suit.

.With the reservation above mentioned, the judgment of the lower court is affirmed.